## In re CLYDE'S ESTATE.

(Surrogate's Court, Otsego County.  October 18, 1915.)

1. LIMITATION OF ACTIONS ⬤⟝54—OPEN ACCOUNTS—CREDITS ALLOWED.

An account against the estate of a decedent for board, room and care, which includes credits only during the time when the statute of limitations would not be a bar, is not such an open account that the items of credit will remove items of charges otherwise barred by the statute from its operation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 295–298; Dec. Dig. ⬤⟝54.]

2. EXECUTORS AND ADMINISTRATORS ⬤⟝221—CLAIMS AGAINST ESTATE—EVIDENCE—ADMISSIONS—PAYMENTS.

Where an account against the estate of a decedent for board, room, and care includes items of credit from time to time, while the credits do not remove the account from the operation of the statute of limitations, they are conclusive against the claimant as to amounts paid.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. ⬤⟝221.]

3. EXECUTORS AND ADMINISTRATORS ☜⟶221—ALLOWANCE OF CLAIMS—CLAIMS FOR SUPPORT AND CARE.

A claim against the estate of a decedent for board, room, and care, if made by a relative of the deceased, must be scrutinized with care, and the proof convincing; but the rule does not apply with equal stringency when the claimant is not a relative, nor is there a presumption that credits were made as payments in full at their respective dates.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. ☜⟶221.]

Contested claim by Julia L. Sutliff against James C. Doubleday and Clarence B. Platner, as administrators of James D. Clyde, deceased. Claim allowed in part.

Barnum Brothers, of Cherry Valley, for claimant.

S. M. Smith, of Binghamton (Augustus Babcock, of Binghamton, of counsel), for administrators.

BALDWIN, S. James D. Clyde, a resident of the town of Cherry Valley, in the county of Otsego, died in that town on the 4th day of December, 1913, at which time he was over the age of 70 years. Decedent was a bachelor, and about the year 1870 he commenced taking his meals at the boarding house in Cherry Valley kept by claimant's mother. The mother of claimant died, and the deceased continued to receive table board in the claimant's home until about April 1, 1904, when he moved into the house and received generally the privileges of a home in the house conducted by claimant. It is not claimed that there was any relationship existing between the parties.

After the death of James D. Clyde, intestate, James C. Doubleday and Clarence B. Platner were appointed administrators of his estate. This claimant thereupon presented a claim against the estate, properly verified, for $3,374.64, which included a note for $400, dated January 29, 1904, upon which note the interest had been paid by decedent to the 29th day of January, 1912, as appears by his own indorsement on said note, and which indorsement removed any question as to the statute of limitations upon that portion of the claim as presented. The claim as presented goes back to January 1, 1897, and calls for payment for table board, use of room, care and nursing, etc., from that date down to the date of the death of decedent. The administrators rejected the claim, and afterwards an agreement was entered into, pursuant to statute, that the claim be determined in the Surrogate's Court upon the final accounting of such administrators.

[1] In this proceeding pleadings are not presented on either side, but the administrators of the estate duly raised from time to time the objection that the claim was barred by the statute of limitations. It is asserted on behalf of the claimant that this claim is an open, current, and running account, and that therefore the earlier items are not barred by the statute of limitations. I cannot take this view. While items of account, in the way of board, care, and nursing, for the earlier period have been proven before me, no proof was offered as

to credits during such period. The items of credit set forth in the verified claim as presented, without other proof as to their correctness, cannot be used by claimant in removing the bar of the statute of limitations as to that portion of the claim which is alleged to have accrued prior to December 4, 1907. According to my view of the matter, any and all charges set forth in the claim, aside from the promissory note in question, seeking to establish an indebtedness against this estate, which were incurred or accrued prior to December 4, 1907, must be treated as barred by the statute of limitations.

[2] It was proven upon the hearing that the decedent received table board, use of room, care of room, washing, and mending from the claimant for a period of 312 weeks continuously. It was proven that the table board was worth $3.50 per week, and that the other services above referred to were worth $1.50 per week. The administrators offered no proof in opposition to that of the claimant, nor as to any different value of such board and care. I therefore feel constrained to hold that the value of the board, use of room, etc., as above referred to, was worth $5 per week for the period of 312 weeks, amounting to $1,560. There should be deducted from such sum the items of credit set forth in the verified claim as presented covering such period. While the claimant should not be permitted to take credit for such self-serving items, as set forth in her claim, for the purpose of removing the bar of the statute of limitations, yet such items of credit, within the period of time for which compensation is to be allowed by me on this hearing, must be deducted from the claim as proven. Such items of credit are a part of the record, and must be used in reduction of the amount of the claim as established.

It was shown upon the hearing that early in the year 1907 the decedent had a shock, and that in the first instance, for a period of time, he had a nurse to care for him, who only remained a short period, but that after such time, and for a period of 5 years and 4 months, the claimant faithfully cared for and waited upon the decedent, giving him kind, careful, and considerate attention in his declining years. His relatives resided at a distance, and the claimant was therefore called upon to give him the attention that he required. The proof is that these extra services were reasonably worth $5 per week, or $20 per month. The claimant, in her claim as presented, charged for such period of time $10 per month, and I feel constrained to allow such charge at the rate of $120 per year, which amounted to $640 for the period of time up to the 1st day of April, 1913. From that date forward it appears that the claimant cared for the deceased for a period of 26 weeks in his last illness, and during a portion of this time the decedent was a great care, was filthy and offensive, which condition the deceased was not at all to blame for, as he was apparently passing through the period of a general breaking down of his bodily functions. During this period of 26 weeks I think an additional charge of $10 a week is warranted by the proof and it should be allowed, amounting to $260.

During the last eight weeks of decedent's life, a nurse was employed; but the claimant assisted in caring for the decedent, and took

the place of the nurse when he was unavoidably absent. I am inclined to think that for such period of time her services were reasonably worth the sum of $5 a week additional, amounting to $40, making a total for such charges allowed by me of $2,500. There should be deducted from such sum, however, the items of credit covering the same period of time, as set forth in the verified claim as presented, amounting to $1,165.50, leaving a balance due claimant of $1,334.50, aside from the note in question. This note should be allowed at $400, with interest on same, which amounts, as computed by me, principal and interest, to $489.25.

[3] The learned counsel for the administrators refer to numerous authorities, indicating that claims of this character must be very carefully scrutinized, and that such claims should be established by strong and convincing proof. An examination of such authorities, however, will show that the claims referred to in that class of cases were where a near relative was attempting to establish a claim against the estate of a deceased person. I recognize the rule that in that class of cases the proof must be stronger and more convincing than where a claim is to be established by one who is not a relative by blood or marriage; neither can I see that the limited credits, as allowed, can create a presumption that at the time of such separate payments that settlement was had to such respective dates. The undisputed value of the services was much more than the credits received. The administrator, Mr. Platner, testified that during the six-year period before the death of the decedent that he was familiar with the decedent's money matters, and yet he offered no proof that any of these payments were made or accepted in satisfaction of the indebtedness to any particular date. Furthermore, it appeared that the decedent was going through a period of stress in his financial affairs, and apparently did not feel able to meet his obligations with the promptness that he would have liked. While I am obliged to recognize the binding force of the statute of limitations as to all business transactions prior to the last six years, I do not think that any other presumption should necessarily be indulged in to deprive claimant from receiving what appears to me to be justly her due for services rendered and for kind and considerate attention to one who was a stranger to the blood, when the relatives, who are now to receive his bounty, did not appear to be able to give him the attention that he might have hoped for.

The question of interest, if any, on this account I prefer to consider further with the attorneys on the adjourned day, at which time the question of costs and the form of the decree may be determined.

This proceeding now stands adjourned until October 18, 1915, at the surrogate's office at Cooperstown.